UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDA L. DRAP | : CIVIL ACTION NO. 3:10-CV-104 |
| | : |
| *Plaintiff,* | : |
| | : |
| V. | : |
| | : |
| MASONICARE AT NEWTOWN, INC., | : |
| ASHLAR OF NEWTOWN, INC., | : |
| and DEBBIE CURTIS | : |
| | : |
| *Defendants.* | : MARCH 23, 2010 |

AMENDED COMPLAINT

FIRST COUNT (DEFENDANT MASONICARE AT NEWTOWN, INC.)

1.    The Plaintiff, Linda L. Drap, (Hereafter "Plaintiff") resides at 87 Castle Meadow Road, Newtown, Connecticut.

2.    The Plaintiff is a Caucasian sixty year old woman.

3.    The Defendant, Masonicare at Newtown, Inc., is a Connecticut corporation with a business address of 22 Masonic Avenue, Wallingford, Connecticut (Hereafter "Defendant Masonicare").

4.    The Defendant Masonicare operates an assisted living facility, Masonicare at Newtown, formerly known at Ashlar of Newtown, located at 139 Toddy Hill Road, Newtown, Connecticut (Hereafter "Ashlar").

5.     The Defendant Masonicare is affiliated with Masonicare Corporation, a Connecticut corporation with a business address of 22 Masonic Avenue, Wallingford, Connecticut.

6.     The Plaintiff was employed at Ashlar for over thirty-three (33) years.

7.     At all relevant times, the Plaintiff's base pay was $15.97 per hour, and she worked forty (40) or more hours per week.

8.     On or about October 21, 2007, the Plaintiff transferred from nursing to the laundry department at Ashlar.

9.     Commencing at the time of said transfer, and continuing throughout her employment thereafter, the Plaintiff was subjected to racial harassment from a black co-worker, the Defendant, Debbie Curtis (Hereafter the "Defendant Curtis").

10.    The Defendant Curtis is an employee at Ashlar who the Plaintiff worked with on a daily basis commencing on or about October 21, 2007.

11.    The Defendant Curtis yelled at and struck the Plaintiff with her hip on a daily basis during the time that they worked together.

12.    The Defendant Curtis also demanded that the Plaintiff perform the vast majority of the work in the laundry room, while the Defendant Curtis sat and watched the Plaintiff work.

13.    As she terrorized the Plaintiff, the Defendant Curtis regularly informed the Plaintiff that the difference between the Defendant Curtis and the Plaintiff was their skin color, and

2

because of the Defendant Curtis's skin color, she could get away with her actions.

14. The Defendant Curtis also informed other white employees that she could get away with her bad conduct because she was black, constantly criticized and disparaged employees who were not black, and stated that all of the housekeepers were "lazy white girls" in the presence of her supervisor, Pete Webster.

15. Other black employees of the Defendant Masonicare repeated the Defendant Curtis's assertion that they too could get away with anything because they were black, while other employees could not get away with similar conduct because they were not black.

16. Although the Plaintiff and other employees complained to their supervisor, Pete Webster, Mr. Webster's supervisor, Ken Bard, and to the Director of Human Resources, Carol Flament, regarding the Defendant Curtis's improper comments and conduct, no action was taken.

17. The Defendant Curtis's conduct was so intolerable, that the Plaintiff and other employees would eat outside instead of the break room in order to try to avoid her harassment.

18. On or about January 7, 2008, the Defendant Curtis pushed the Plaintiff several feet, in the presence of a witness and fellow employee, David Waite, injuring the Plaintiff's hip.

19. The Plaintiff complained to the Human Resources Department regarding the Defendant Curtis's conduct, and to Webster on a daily basis, but the Defendant Masonicare took no action.

20. Following the January 7, 2008 incident, the Defendant Curtis's daily abuse of the Plaintiff continued, causing the Plaintiff to cry in the presence of co-workers and her supervisors and complain further regarding the Defendant Curtis's misconduct to Webster, Human Resources, and Thomas Gutner, the President of Ashlar.

21. In or about February, 2008, the Defendant Curtis threw a bag of clothes at the Plaintiff, screamed at her, and came toward her as if she was going to hit the Plaintiff.

22. When the Plaintiff complained to Webster in tears about the Defendant Curtis's misconduct, the Defendant Curtis came toward Webster screaming.

23. Following the Defendant Curtis's violent actions in February, 2008, the Plaintiff was informed that the Defendant Curtis was going to receive a five (5) day suspension, which the Plaintiff deemed to be inadequate based on the Defendant Curtis's repeated violent and discriminatory actions.

24. The Defendant Curtis returned to work on or prior to the expiration of said five (5) day period.

25. On February 14, 2008, the Plaintiff informed Thomas Gutner, the President of Ashlar while crying that she worked in a hostile work environment, and in response, he walked away from her.

26. On February 19, 2008, a meeting was attended by the Plaintiff, the Defendant

Curtis, two (2) supervisors, including Pete Webster, and the Director of Human Resources, Carol Flament.

27.   The Plaintiff was informed at the aforementioned meeting that she and the Defendant Curtis needed to get along with each other, that she needed to say something nice about the Defendant Curtis, that the Plaintiff had to learn how to work with the Defendant Curtis and go home and play with her grandchildren, and that the Plaintiff had the option of remaining in her position or transferring to Housekeeping.

28.   The Housekeeping Position would have required significantly less favorable hours, including weekends and holidays, and continued regular contact with the Defendant Curtis.

29.   The Defendant Masonicare did not propose that the Defendant Curtis be transferred or terminated despite her flagrantly discriminatory and violent conduct.

30.   The Plaintiff has not been able to return to Ashlar since February 19, 2008 due to the racially hostile work environment, and the Defendant Masonicare's failure to adequately remedy said environment.

31.   The Plaintiff has been on a disability leave since February 19, 2008 as a result of the harassment she endured at Ashlar, and has incurred damages, including lost income, as a result of her absence from work.

32.   The Plaintiff suffered adverse employment actions, under circumstances giving rise

to an inference of discrimination based on race and color in violation of Connecticut General Statutes §46a-60(a) including, but not limited to the following ways:

    (a)   The Plaintiff was subjected to a racially hostile work environment at Ashlar as a result of the pervasive and severe nature of the Defendant Curtis's statements and conduct;

    (b)   The Defendant Masonicare failed to adequately address the Defendant Curtis's discriminatory statements and conduct, despite the pervasive and severe nature of same; and

    (c)   The Plaintiff has been treated less favorably than the Defendant Curtis with regard to conditions of employment.

33.   In addition, the Plaintiff incurred significant emotional damages as a result of the aforementioned racial harassment and discrimination, including, but not limited to, depression and anxiety, which require ongoing psychiatric treatment and medication.

34.   On or about August 14, 2008, the Plaintiff filed a Complaint with the Connecticut Commission on Human Rights and Opportunities (Hereafter "CCHRO") and Equal Employment Opportunity Commission (Hereafter "EEOC") as a result of the aforementioned discriminatory conduct.

35.   On or about October 23, 2009, the CCHRO released its jurisdiction over the

aforementioned Complaint at the Plaintiff's request in accordance with Connecticut General Statutes §46a-101.  A copy of the Release is attached hereto and incorporated herein as Exhibit A.

36.    A Copy of this Complaint is being sent to the CCHRO.

## SECOND COUNT (DEFENDANT ASHLAR OF NEWTOWN, INC.)

1.    The Plaintiff, Linda L. Drap, (Hereafter "Plaintiff") resides at 87 Castle Meadow Road, Newtown, Connecticut.

2.    The Plaintiff is a Caucasian sixty year old woman.

3.    The Defendant, Ashlar of Newtown, Inc. is a Connecticut corporation with a business address of 22 Masonic Avenue, Wallingford, Connecticut (Hereafter "Defendant Ashlar").

4. At all relevant times, the Defendant Ashlar operated an assisted living facility known at Ashlar of Newtown, located at 139 Toddy Hill Road, Newtown, Connecticut (Hereafter "Ashlar").

5.    The Defendant Ashlar of Newtown is affiliated with Masonicare Corporation, a Connecticut corporation with a business address of 22 Masonic Avenue, Wallingford, Connecticut.

6.    The Plaintiff was employed at Ashlar for over thirty-three (33) years.

7.   At all relevant times, the Plaintiff's base pay was $15.97 per hour, and she worked forty (40) or more hours per week.

8.   On or about October 21, 2007, the Plaintiff transferred from nursing to the laundry department at Ashlar.

9.   Commencing at the time of said transfer, and continuing throughout her employment thereafter, the Plaintiff was subjected to racial harassment from a black co-worker, the Defendant, Debbie Curtis (Hereafter the "Defendant Curtis").

10.   The Defendant Curtis is an employee at Ashlar who the Plaintiff worked with on a daily basis commencing on or about October 21, 2007.

11.   The Defendant Curtis yelled at and struck the Plaintiff with her hip on a daily basis during the time that they worked together.

12.   The Defendant Curtis also demanded that the Plaintiff perform the vast majority of the work in the laundry room, while the Defendant Curtis sat and watched the Plaintiff work.

13.   As she terrorized the Plaintiff, the Defendant Curtis regularly informed the Plaintiff that the difference between the Defendant Curtis and the Plaintiff was their skin color, and because of the Defendant Curtis's skin color, she could get away with her actions.

14.   The Defendant Curtis also informed other white employees that she could get away with her bad conduct because she was black, constantly criticized and disparaged employees who

8

were not black, and stated that all of the housekeepers were "lazy white girls" in the presence of her supervisor, Pete Webster.

15.   Other black employees of the Defendant Ashlar repeated the Defendant Curtis's assertion that they too could get away with anything because they were black, while other employees could not get away with similar conduct because they were not black.

16.   Although the Plaintiff and other employees complained to their supervisor, Pete Webster, Mr. Webster's supervisor, Ken Bard, and to the Director of Human Resources, Carol Flament, regarding the Defendant Curtis's improper comments and conduct, no action was taken.

17.   The Defendant Curtis's conduct was so intolerable, that the Plaintiff and other employees would eat outside instead of the break room in order to try to avoid her harassment.

18.   On or about January 7, 2008, the Defendant Curtis pushed the Plaintiff several feet, in the presence of a witness and fellow employee, David Waite, injuring the Plaintiff's hip.

19.   The Plaintiff complained to the Human Resources Department regarding the Defendant Curtis's conduct and to Webster on a daily basis, but the Defendant Ashlar took no action.

20.   Following the January 7, 2008 incident, the Defendant Curtis's daily abuse of the Plaintiff continued, causing the Plaintiff to cry in the presence of co-workers and her supervisors and complain further regarding the Defendant Curtis's misconduct to Webster, Human

Resources, and Thomas Gutner, the President of Ashlar.

21.   In or about February, 2008, the Defendant Curtis threw a bag of clothes at the Plaintiff, screamed at her, and came toward her as if she was going to hit the Plaintiff.

22.   When the Plaintiff complained to Webster in tears about the Defendant Curtis's misconduct, the Defendant Curtis came toward Webster screaming.

23.   Following the Defendant Curtis's violent actions in February, 2008, the Plaintiff was informed that the Defendant Curtis was going to receive a five (5) day suspension, which the Plaintiff deemed to be inadequate based on the Defendant Curtis's repeated violent and discriminatory actions.

24.   The Defendant Curtis returned to work on or prior to the expiration of said five (5) day period.

25.   On February 14, 2008, the Plaintiff informed Thomas Gutner, the President of Ashlar while crying that she worked in a hostile work environment, and in response, he walked away from her.

26.   On February 19, 2008, a meeting was attended by the Plaintiff, the Defendant Curtis, two (2) supervisors, including Pete Webster, and the Director of Human Resources, Carol Flament.

27.   The Plaintiff was informed at the aforementioned meeting that she and the

Defendant Curtis needed to get along with each other, that she needed to say something nice about the Defendant Curtis, that the Plaintiff had to learn how to work with the Defendant Curtis and go home and play with her grandchildren, and that the Plaintiff had the option of remaining in her position or transferring to Housekeeping.

28.  The Housekeeping Position would have required significantly less favorable hours, including weekends and holidays, and continued regular contact with the Defendant Curtis.

29.  The Defendant Ashlar did not propose that the Defendant Curtis be transferred or terminated despite her flagrantly discriminatory and violent conduct.

30.  The Plaintiff has not been able to return to Ashlar since February 19, 2008 due to the racially hostile work environment, and the Defendant Ashlar's failure to adequately remedy said environment.

31.  The Plaintiff has been on a disability leave since February 19, 2008 as a result of the harassment she endured at Ashlar, and has incurred damages, including lost income, as a result of her absence from work.

32.  The Plaintiff suffered adverse employment actions, under circumstances giving rise to an inference of discrimination based on race and color in violation of Connecticut General Statutes §46a-60(a) including, but not limited to the following ways:

(a)   The Plaintiff was subjected to a racially hostile work environment at Ashlar as

a result of the pervasive and severe nature of the Defendant Curtis's statements and conduct;

(b) The Defendant Ashlar failed to adequately address the Defendant Curtis's discriminatory statements and conduct, despite the pervasive and severe nature of same; and

(c) The Plaintiff has been treated less favorably than the Defendant Curtis with regard to conditions of employment.

33. In addition, the Plaintiff incurred significant emotional damages as a result of the aforementioned racial harassment and discrimination, including, but not limited to, depression and anxiety, which require ongoing psychiatric treatment and medication.

34. On or about August 14, 2008, the Plaintiff filed a Complaint with the Connecticut Commission on Human Rights and Opportunities (Hereafter "CCHRO") and Equal Employment Opportunity Commission (Hereafter "EEOC") as a result of the aforementioned discrimination.

35. On or about October 23, 2009, the CCHRO released its jurisdiction over the aforementioned Complaint at the Plaintiff's request in accordance with Connecticut General Statutes §46a-101. A copy of the Release is attached hereto and incorporated herein as Exhibit A.

36. A Copy of this Complaint is being sent to the CHRO.

**THIRD COUNT (DEFENDANT MASONICARE AT NEWTOWN, INC.)**

1-31.    Paragraphs 1 through 31 of the First Count are incorporated as paragraphs 1 through 31 of the Third Count as if fully set forth herein.

32.    The Plaintiff suffered adverse employment actions, under circumstances giving rise to an inference of discrimination based on race and color in violation of 42 United States Code 2000e-2 *et seq.* including, but not limited to the following ways:

(a)    The Plaintiff was subjected to a racially hostile work environment at Ashlar as a result of the pervasive and severe nature of the Defendant Curtis's statements and conduct;

(b)    The Defendant Masonicare failed to adequately address the Defendant Curtis's discriminatory statements and conduct, despite the pervasive and severe nature of same; and

(c)    The Plaintiff has been treated less favorably than the Defendant Curtis with regard to    conditions of employment.

33.    In addition, the Plaintiff incurred significant emotional damages as a result of the aforementioned racial harassment and discrimination, including, but not limited to, depression and anxiety, which require ongoing psychiatric treatment and medication.

34.    The Defendant Masonicare engaged in a discriminatory practice with malice or with

reckless indifference to the federally protected rights of an aggrieved individual, the Plaintiff.

35.    On or about August 14, 2008, the Plaintiff filed a Complaint with the Connecticut Commission on Human Rights and Opportunities (Hereafter "CCHRO") and Equal Employment Opportunity Commission (Hereafter "EEOC") with regard to the aforementioned discrimination.

36.    On or about October 28, 2009, the EEOC issued a Notice of Right to Sue at the Plaintiff's request. A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

37. A Copy of this Complaint is being sent to the EEOC.

## FOURTH COUNT (DEFENDANT ASHLAR OF NEWTOWN, INC.)

1-31.    Paragraphs 1 through 31 of the Second Count are incorporated as paragraphs 1 through 31 of the Fourth Count as if fully set forth herein.

32.    The Plaintiff suffered adverse employment actions, under circumstances giving rise to an inference of discrimination based on race and color in violation of 42 United States Code 2000e-2 *et seq*. including, but not limited to the following ways:

(a)  The Plaintiff was subjected to a racially hostile work environment at Ashlar as a result of the pervasive and severe nature of the Defendant Curtis's statements and conduct;

(b)  The Defendant Ashlar failed to adequately address the Defendant Curtis's discriminatory statements and conduct, despite the pervasive and severe nature of

same; and

(c)   The Plaintiff has been treated less favorably than the Defendant Curtis with

regard to    conditions of employment.

33.    In addition, the Plaintiff incurred significant emotional damages as a result of the

aforementioned racial harassment and discrimination, including, but not limited to, depression

and anxiety, which require ongoing psychiatric treatment and medication.

34.    The Defendant Ashlar engaged in a discriminatory practice with malice or with

reckless indifference to the federally protected rights of an aggrieved individual, the Plaintiff.

35.    On or about August 14, 2008, the Plaintiff filed a Complaint with the Connecticut

Commission on Human Rights and Opportunities (Hereafter "CCHRO") and Equal Employment

Opportunity Commission (Hereafter "EEOC") with regard to the aforementioned discrimination.

36.    On or about October 28, 2009, the EEOC issued a Notice of Right to Sue at the

Plaintiff's request.  A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

37.    A Copy of this Complaint is being sent to the EEOC.

**FIFTH COUNT (DEFENDANT DEBBIE CURTIS)**

1.-32.    Paragraphs 1 through 32 of the First Count are incorporated as paragraphs 1

through 32 of the Fifth Count as if fully set forth herein.

33.-35. Paragraphs 32-34 of the Third Count are incorporated as paragraph 33 through 35

of the Fifth Count as if fully set forth herein.

36.    The Defendant Curtis intended to inflict emotional distress on the Plaintiff, or she knew or should have known that emotional distress was a likely result of her conduct.

37.    The Defendant Curtis's conduct was extreme and outrageous.

38.    The Defendant Curtis's conduct was the cause of the Plaintiff's distress.

39.    The emotional distress sustained by the Plaintiff was severe.

**SIXTH COUNT (DEFENDANT MASONICARE AT NEWTOWN, INC.)**

1.-39.    Paragraphs 1 through 39 of the Fifth Count are incorporated as paragraphs 1 through 39 of the Sixth Count as if fully set forth herein.

40.    The Defendant Masonicare is liable for emotional distress sustained by the Plaintiff in that:

    (a) The Defendant Curtis's conduct was within the scope of her employment, and in furtherance of the Defendant Masonicare's business; and/or

    (b) The Defendant Masonicare committed, directed, or ratified the Defendant Curtis's conduct.

**SEVENTH COUNT (DEFENDANT DEBBIE CURTIS)**

1.-32.    Paragraphs 1 through 32 of the Second Count are incorporated as paragraphs 1 through 32 of the Seventh Count as if fully set forth herein.

33.-35. Paragraphs 32-34 of the Fourth Count are incorporated as paragraph 33 through 35 of the Seventh Count as if fully set forth herein.

36.   The Defendant Curtis intended to inflict emotional distress on the Plaintiff, or she knew or should have known that emotional distress was a likely result of her conduct.

37.   The Defendant Curtis's conduct was extreme and outrageous.

38.   The Defendant Curtis's conduct was the cause of the Plaintiff's distress.

39.   The emotional distress sustained by the Plaintiff was severe.

## EIGHTH COUNT (DEFENDANT ASHLAR NEWTOWN, INC.)

1.-39. Paragraphs 1 through 39 of the Seventh Count are incorporated as paragraphs 1 through 39 of the Eighth Count as if fully set forth herein.

40.   The Defendant Ashlar is liable for emotional distress sustained by the Plaintiff in that:

(a) The Defendant Curtis's conduct was within the scope of her employment, and in furtherance of the Defendant Ashlar's business; and/or

(b) The Defendant Ashlar committed, directed, or ratified the Defendant Curtis's conduct.

17

## PLAINTIFF'S CLAIMS FOR RELIEF

**WHEREFORE**, the Plaintiff claims:

1. Monetary damages in an amount greater than Fifteen Thousand and 00/100 ($15,000.00) Dollars, exclusive of attorney's fees, interest, and costs;

2. Attorneys' fees and costs pursuant to Connecticut General Statutes §46a-104;

3. Attorneys' fees and costs pursuant to 42 U.S.C. 2000e-5;

4. Punitive damages pursuant to 42 U.S.C. 1981a;

5. Punitive Damages; and

4. Such other relief as is equitable and just.

<div style="margin-left:40%">

THE PLAINTIFF,
LINDA DRAP


/s/Laura A. Goldstein
Laura A. Goldstein (ct 15398)
COLLINS, HANNAFIN, GARAMELLA,
JABER & TUOZZOLO, P.C.
148 Deer Hill Avenue
Danbury, CT 06810
Her Attorneys
Telephone: (203) 744-2150
Facsimile: (203) 791-1126
E-mail: lgoldstein@chgjtlaw.com

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on **March 23, 2010** a copy of foregoing **Amended Complaint** was served electronically and/or by mail.

Genea Odessa Bell, Esq.
Hugh F. Murray, III, Esq.
MURTHA CULLINA LLP
CityPlace 1 – 185 Asylum Street
Hartford, CT 06103-3469
Telephone:  (860) 240-6000
Facsimile :  (860) 240-6150
gbell@murthalaw.com
hmurray@murthalaw.com

Christopher M. Hodgson, Esq.
Rachel Volkman Kushel, Esq.
DURANT, NICHOLS, HOUSTON,
HODGSON & CORTESE-COSTA, P.C.
1057 Broad Street
Bridgeport, CT 06604
Telephone:  (203) 366-3438
Facsimile :  (203) 384-0317
chodgson@durantnic.com
rkushel@durantnic.com

/s/Laura A. Goldstein
Laura A. Goldstein (ct 15398)
COLLINS, HANNAFIN, GARAMELLA,
JABER & TUOZZOLO, P.C.
148 Deer Hill Avenue
Danbury, CT 06810
Telephone: (203) 744-2150
Facsimile: (203) 791-1126
E-mail: lgoldstein@chgjtlaw.com